NO. COA14-185

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

Beverage Systems of the Carolinas,
LLC,

    Plaintiff,

    v.                         Iredell County
                                    No. 12 CVS 1519

Associated Beverage Repair, LLC,
Ludine Dotoli and Cheryl Dotoli,

    Defendants.

Appeal by plaintiff from order entered 3 October 2013 by Judge A. Robinson Hassell in Iredell County Superior Court. Heard in the Court of Appeals 20 May 2014.

> *Jones, Childers, McLurkin & Donaldson, PLLC, by Kevin C. Donaldson and Dennis W. Dorsey, for plaintiff-appellant.*

> *Eisele, Ashburn, Greene & Chapman, PA, by Douglas G. Eisele, for defendants-appellees.*

HUNTER, Robert C., Judge.

Plaintiff timely appeals from an order entered 3 October 2013 granting defendants' motion for summary judgment. After careful review, because the trial court had express authority to revise the restrictions of the non-compete agreement, we reverse the trial court's order and remand for the trial court to revise the geographic area covered by the non-compete to include those

areas necessary to reasonably protect plaintiff's business interests. Furthermore, since there is a genuine issue of material fact as to whether Ludine Dotoli violated the revised non-compete, we reverse the order granting summary judgment on the breach of contract claim and remand for trial. Finally, because plaintiff presented evidence showing a genuine issue of material fact for the remaining tort claims and request for injunctive relief, we reverse the order granting defendants' motion for summary judgment and remand for trial.

## Background

The pertinent facts alleged in plaintiff's complaint are as follows: In 2009, Mark Gandino ("Gandino") created and organized Beverage Systems of the Carolinas, LLC, a company that supplies, installs, and services beverage products and beverage dispensing equipment in North Carolina ("plaintiff"). Beginning in 2008 and continuing through 2009, Gandino negotiated with Thomas and Kathleen Dotoli, the parents of defendant Ludine Dotoli ("Ludine")[1] (collectively, Thomas, Kathleen, and Ludine are referred to as "the Dotolis"), about the potential purchase of the business and assets of Imperial Unlimited Services, Inc.

---

[1] Throughout their pleadings and brief, plaintiff and defendants refer to Mr. Dotoli as "Ludine" even though it appears from his affidavit that his name is spelled "Loudine." For consistency, we use the same spelling as the parties in this opinion.

("Imperial") and Elegant Beverage Products, LLC ("Elegant") (collectively, Imperial and Elegant are referred to as "the businesses"). On or about 20 July 2009, plaintiff entered into an "Asset Purchase Agreement" (the "Agreement") with Elegant, Imperial, and the Dotolis. The Agreement provided for the sale of Imperial's and Elegant's assets, trade names, customer lists, accounts receivable, current customers and customer contracts, all equipment, and real property.

As part of the Agreement, Thomas, Kathleen, and Ludine agreed to execute a "Non-Competition Agreement" (the "non-compete"). Specifically, section 1 of the non-compete provided that:

> Subject to the provisions of Section 6 hereof, Seller and Shareholder shall not, from the effective date of the Asset Agreement in the states of North Carolina or South Carolina until the earlier of (i) October 1, 2014 (the "Non-Competition Period"), or (ii) such other period of time as may be the maximum permissible period of enforceability of this covenant (the "Termination Date"), without the prior written, consent of Purchaser, directly or indirectly, for himself or on behalf of or in conjunction with any person, partnership, corporation or other entity, compete, own, operate, control, or participate or engage in the ownership, management, operation or control of, or be connected with as an officer, employee, partner, director, shareholder, representative, consultant, independent contractor, guarantor, advisor

> or in any other manner or otherwise, directly or indirectly, have a financial interest in, a proprietorship, partnership, joint venture, association, firm, corporation or other business organization or enterprise that is engaged in the business of the Purchaser or any of its respective affiliates or subsidiaries on behalf of clients (the "Business").

The non-compete went on to say that:

> If, at the time of enforcement of any provisions of Sections 1, 3 or 4 hereof, a court holds that the restrictions stated herein are unreasonable under circumstances then existing, the parties hereto agree that the maximum period, scope or geographical area that are reasonable under such circumstances shall be substituted for the stated period, scope or area, and that the court shall be allowed to revise the restrictions contained in Sections 1, 3 and 4 hereof to cover the maximum period, scope and area permitted by law.

The Dotolis executed the non-compete at the closing on 30 September 2009. Plaintiff claimed that it collectively paid the Dotolis, Imperial, and Elegant $10,000 as consideration for the non-compete.

In March 2011, plaintiff learned that Ludine's wife Cheryl Dotoli ("Cheryl") had created defendant Associated Beverage Repair, LLC, ("Associated Beverage") (for purposes of this opinion, Associated Beverage, Ludine, and Cheryl are collectively referred to as "defendants") and that Ludine was

the manager of Associated Beverage. Moreover, plaintiff alleged that it found out that Ludine was soliciting business from plaintiff's existing customers, specifically PF Chang's and Bunn-O-Matic.

On 8 July 2013, plaintiff filed an amended complaint alleging the following causes of action: (1) breach of the non-compete against Ludine; (2) a request for preliminary and permanent injunctive relief against Ludine; (3) tortious interference with contract against all defendants; (4) unfair and deceptive practices against all defendants; (5) tortious interference with prospective economic advantage against all defendants; and (6) punitive damages. On 11 September 2013, defendants filed a motion for summary judgment as to all causes of action. In support of their motion, defendants filed an affidavit by Ludine claiming that "the deepest penetration by either Elegant or Imperial for the conduct of their business into South Carolina was Rock Hill . . . and to Spartanburg," and the "western-most penetration" included Gaffney. Furthermore, Ludine averred that in North Carolina, the furthest west the companies' business went was Morganton. The eastern-most penetration was to Wake County. Finally, Ludine denied contacting, communicating, or in any way inducing any prior

customers of Imperial or Elegance or present customers of plaintiff into switching their business to Associated Beverage.

The matter came on for hearing on 30 September 2013. On 3 October 2013, the trial court entered an order granting defendants' motion for summary judgment as to all claims. Plaintiff timely appealed.

**Standard of Review**

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 573 (2008) (internal citations omitted).

**Arguments**

**I. The Non-Compete Agreement**

Plaintiff first argues that the trial court erred in granting summary judgment on its breach of contract claim against Ludine. Specifically, plaintiff contends that the non-compete is valid as a matter of law and that there is an issue of material fact as to whether Ludine violated it. In the alternative, should the Court determine that the non-compete is unenforceable as to South Carolina, plaintiff argues that the

non-compete may still be enforced in North Carolina based on the "blue pencil doctrine." Because the trial court had express authority to revise the territorial restrictions of the non-compete pursuant to the terms of the agreement, we reverse the trial court's order granting summary judgment and remand this issue for the trial court to revise the geographic territories to include those areas reasonably necessary to protect plaintiff's business interests acquired by the purchase of Elegant and Imperial. Furthermore, there is a genuine issue of material fact as to whether Ludine violated the terms of the non-compete for the jury to resolve.

> It is the rule today that when one sells a trade or business and, as an incident of the sale, covenants not to engage in the same business in competition with the purchaser, the covenant is valid and enforceable (1) if it is reasonably necessary to protect the legitimate interest of the purchaser; (2) if it is reasonable with respect to both time and territory; and (3) if it does not interfere with the interest of the public.

*Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 662-63, 158 S.E.2d 840, 843 (1968). Whether a covenant not to compete is reasonable is a matter of law to be decided by the court. *Id.* at 663, 158 S.E.2d at 843. "Greater latitude is generally allowed in these covenants given by the seller in connection

with the sale of a business than in covenants ancillary to an employment contract." *Seaboard Indus., Inc. v. Blair*, 10 N.C. App. 323, 333, 178 S.E.2d 781, 787 (1971). Here, only the first two elements need to be addressed since defendants did not argue before the trial court nor on appeal that the non-compete interfered with the interest of the public.

## A. Legitimate Interest

"A covenant must be no wider in scope than is necessary to protect the business of the employer." *Hartman v. W.H. Odell & Associates, Inc.*, 117 N.C. App. 307, 316, 450 S.E.2d 912, 919 (1994) (internal quotation marks omitted).

Here, the scope of prohibited employment activities in the non-compete is reasonably necessary to protect plaintiff's business. In his affidavit, Ludine stated that he had not only been the creator and owner of Elegant, but he had also been the "principal technician" of Imperial. Thus, his employment activities for the businesses would have included both employee ones and activities related to management, operation, and control. The non-compete prohibits Ludine from competing, owning, managing, operating or controlling, or be connected to someone who has a financial interest in any business involved in the beverage dispensing or servicing industry. Thus, the non-

compete prohibits Ludine from engaging in employment activities he used to perform for Elegant and Imperial, and the scope of the non-compete reasonably protects a legitimate business interest of plaintiff.

### B. Time and Territory Reasonableness

The non-compete restricted Ludine's activities for a five-year period following the sale of Elegant and Imperial. Although our Court has stated that "[a] five-year time restriction is the outer boundary which our courts have considered reasonable" and has noted that five-year restrictions "are not favored" in employment contracts, *Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 280, 530 S.E.2d 878, 881 (2000), "[i]n cases where the covenants not to compete accompanied the sale of a trade or business, time limitations of ten, fifteen and twenty years, as well as limitations for the life of one of the parties, have been upheld by the Supreme Court of North Carolina[,]" *Seaboard Indus.,* 10 N.C. App. at 335, 178 S.E.2d at 788. Furthermore, the five-year restriction was reasonable based on Imperial's past business presence in the industry. Imperial had been operating since 1999. In fact, plaintiff recognized how valuable Imperial's presence was in the beverage

dispensing industry and specifically purchased its "goodwill" for $100,000. Accordingly, the time restraint was reasonable.

With regard to the reasonableness of the territory, this Court has noted that

> to prove that a geographic restriction in a covenant not to compete is reasonable, an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships. A restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in *maintaining* its customers. The employer must show that the territory embraced by the covenant is no greater than necessary to secure the protection of its business or good will.

*Hartman*, 117 N.C. App. at 312, 450 S.E.2d at 917 (internal citations omitted).

Here, the non-compete was limited to North and South Carolina. Ludine's affidavit stated that Imperial's and Elegant's combined business extended from Wake County to Morganton in North Carolina. In South Carolina, Ludine averred that their business only reached as deep as Rock Hill and Spartanburg and as far west as Gaffney. Consequently, the geographic area covered by the non-compete was not limited to places where Elegant and Imperial had former customers and included areas not necessary to maintain plaintiff's customer

relationships; thus, it was unreasonable.[2] Plaintiff requests that should the Court find that the geographic territory in the non-compete is overly broad, the Court should enforce the non-compete only as to North Carolina under the "blue pencil doctrine."

North Carolina has adopted the "strict blue pencil doctrine":

> When the language of a covenant not to compete is overly broad, North Carolina's "blue pencil" rule severely limits what the court may do to alter the covenant. A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or rewrite the covenant.

*Hartman*, 117 N.C. App. at 317, 450 S.E.2d at 920. Under this doctrine, the trial court may use its inherent power to enforce the reasonable, divisible provisions of the non-compete.

---

[2]It should be noted that any area in which plaintiff itself had former or existing customers would also be reasonable to include in the non-compete. However, defendants contended in their motion for summary judgment that "[t]here is no pleading or proof that [plaintiff] operated anywhere in North Carolina or South Carolina prior to concluding purchase of the assets of Imperial and Elegant[.]" Plaintiff did not refute this nor did it provide any evidence in the record that it either had been operating in North or South Carolina prior to the acquisition or that it has existing customers it did not acquire from Imperial or Elegant. Therefore, for purposes of reasonableness, only former customers of Imperial and Elegant will determine the scope of the territory.

*Welcome Wagon Int'l, Inc. v. Pender*, 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961).

We agree with plaintiff that, under the "blue pencil doctrine," the trial court could have, but chose not to, strike the unreasonable territorial provisions of the non-compete. However, the trial court had authority to enforce the non-compete through paragraph six of the non-compete which specifically and expressly gave the trial court authority to "revise the restrictions . . . to cover the maximum period, scope and area permitted by law." In other words, the trial court's ability to revise the non-compete is not subject to the restrictions of the "blue pencil doctrine" which prohibits a trial court from revising unreasonable provisions in non-compete agreements. Instead, here, the parties included a specific provision in the non-compete—specifically, paragraph six— enabling the trial court to revise the non-compete. Given the fact that non-competes drafted based on the sale of a business are given more leniency than those drafted pursuant to an employment contract since the parties are in relatively equal bargaining positions, the trial court should not have held the entire non-compete unenforceable nor should the trial court's power to revise and enforce reasonable provisions of the non-

compete be limited under the "blue pencil doctrine." Instead, the trial court should have invoked its power under paragraph six and revised the non-compete to make it reasonable based on the evidence before it.

The facts of this case are distinguishable from those in which the trial court's authority to revise a non-compete is substantially limited by the "blue pencil doctrine" because those non-competes did not give the trial court express authority to revise the agreements. *See Hartman*, 117 N.C. App. at 318, 450 S.E.2d at 920 (ruling that the non-compete "could not be saved by 'blue penciling'"); *Manpower of Guilford Cnty., Inc. v. Hedgecock*, 42 N.C. App. 515, 523, 257 S.E.2d 109, 115 (1979) (noting that "th[e] Court cannot in the absence of clearly severable territorial divisions, enforce the restrictions only insofar as they are reasonable" under the "blue pencil doctrine"). In contrast, pursuant to the sale of a business, these parties, who were at arms-length with equal bargaining power, agreed to allow the trial court to revise the non-compete to make it reasonable, and the trial court should have done so. In sum, unlike previous cases, the parties here specifically contracted to give the court power to revise the

scope of the non-compete should part of it be determined to be unenforceable.

While this precise issue has not arisen in our Courts, i.e., the right of a trial court to revise the provisions of a non-compete based on the express language of the contract for the sale of a business, this Court has noted that similar language has appeared in a franchisor-franchisee contract in *Outdoor Lighting Perspectives Franchising, Inc. v. Harders*, __ N.C. App. __, 747 S.E.2d 256 (2013). In *Outdoor Lighting*, __ N.C. App. at __, 747 S.E.2d at 261, the franchise agreement between the parties gave the franchisor the right to reduce the scope of the non-compete, a right which the franchisor attempted to invoke. In looking at this particular provision, the Court noted that "it appears, given the language of the agreement, that [the franchisor] had the right to modify the non-competition provision in this manner and exercised this authority in an appropriate manner." *Id*. at __, 747 S.E.2d at 265, n.3. However, the Court was not required to "determine the effectiveness of [that] exercise in private 'blue penciling'" because the modified geographic scope was still unreasonable. *Id*. Although *Outdoor Lighting's* holding does not directly affect the outcome in this case, it indicates a willingness of

our Courts to recognize and enforce revised non-compete agreements when the parties contract for the right to revise a non-compete outside the employment context.

Finally, in recognizing the importance of allowing parties who agree that provisions of a non-compete may be revised in an effort to enforce them, we believe that this practice makes good business sense and better protects both a seller's and purchaser's interests in the sale of a business. It not only protects the business interests of the purchaser, which is a notable concern especially in cases where the seller, similar to Elegant and Imperial, has spent a substantial amount of time building up goodwill in a particular industry, but it also allows the seller to make more money than it would have had it just sold the assets of the business. This is especially true in North Carolina where our Supreme Court has been unwilling to adopt a more flexible approach to the "blue pencil doctrine," leaving the courts with few options to try to enforce non-competes in a rapidly changing economy.[3] In addition, potential buyers may be reluctant to buy a business not only if a seller

---

[3] Judge Steelman highlighted this issue in his concurring opinion in *MJM Investigations, Inc. v. Sjostedt*, 205 N.C. App. 468, 698 S.E.2d 202, 2010 WL 2814531, *5 (No. COA09-596) (July 20, 2010) (unpublished), noting that: "The law of restrictive covenants should be re-evaluated by our Supreme Court in the context of changing economic conditions."

was unwilling to sign a non-compete but also if that non-compete could not be modified and enforced by the courts. As a final note, it is important to remember that, here, pursuant to the sale of Imperial and Elegant, Ludine agreed to sign the non-compete and was compensated for that agreement as well as getting, arguably, a higher price for the businesses' assets. Then, after allegedly violating the non-compete and being sued by plaintiff, he asked the courts to hold the negotiated-for non-compete invalid.

In support of its conclusion that the trial court could not have revised the non-compete despite the fact that paragraph six explicitly gave it the power to, the dissent notes that the language of paragraph six limits the trial court's authority to revise to that "permitted by law." Thus, according to the dissent, paragraph six "by its very terms makes the 'blue pencil' doctrine applicable." However, this interpretation of the language of paragraph six would construe the provision meaningless. By this logic, the parties would be giving the trial court authority to revise the agreement but, in the same sentence, restrict its power under the "blue pencil doctrine" which expressly prohibits any and all revisions by the trial court.

Instead, in interpreting the language of paragraph six, the phrase "permitted by law" applies to how the trial court revises the agreement, requiring it to revise under the parameters of reasonableness in terms of time and territory. On remand, the trial court is tasked with revising the territorial restrictions of the non-compete to make them reasonable based on the former client base of Imperial and Elegant. Thus, by the terms of this opinion, the trial court is revising the scope in such a way as to make it enforceable, i.e., "permitted," by law.

For all the above mentioned reasons, we reverse the trial court's order and remand this matter to the trial court to revise the non-compete provisions after determining where in North Carolina and South Carolina it would be reasonable to enforce the non-compete based on Elegant's and Imperial's former customer base.

In addition, although, as a matter of law, the trial court should have revised the non-compete to make it reasonable and enforceable, there exists a genuine issue of material fact as to whether Ludine violated the non-compete. Plaintiff alleged that its customers claimed that Ludine was attempting to solicit their business to Associated Beverage. Although Ludine refutes this in his affidavit, "[c]ontradictions or discrepancies in the

evidence must be resolved by the jury rather than the trial judge[,]" *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 481, 562 S.E.2d 887, 897 (2002). Thus, once the trial court revises the non-compete to include only those areas reasonably necessary to protect plaintiff's business interests, the issue of whether Ludine violated the non-compete should be tried to determine whether Ludine violated the non-compete.

## II. Tortious Interference with a Contract

Next, plaintiff argues that the trial court erred in granting summary judgment as to its claim for tortious interference with a contract. Specifically, plaintiff contends that it had implied-in-fact contracts with third parties based on past business dealings and that there is a material issue of fact as to whether defendants interfered with those contracts.

> To establish a claim for tortious interference with contract, a plaintiff must show: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Sellers v. Morton*, 191 N.C. App. 75, 81, 661 S.E.2d 915, 921 (2008).

Here, plaintiff has forecasted evidence that it had implied contracts with third-party customers. Although it is undisputed that plaintiff did not have express contracts with third-party customers, plaintiff presented evidence showing conduct that created implied contracts. "An implied in fact contract is a genuine agreement between parties; its terms may not be expressed in words, or at least not fully in words. The term, implied in fact contract, only means that the parties had a contract that can be seen in their conduct rather than in any explicit set of words." *Miles v. Carolina Forest Ass'n*, 167 N.C. App. 28, 35-36, 604 S.E.2d 327, 333 (2004); *see also Archer v. Rockingham Cnty.*, 144 N.C. App. 550, 557, 548 S.E.2d 788, 793 (2001) ("An implied contract refers to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding."). Defendants described the businesses' relationship with its customers as: "so long as Imperial provided its services competently and at reasonable rates, its customers kept calling back for additional services. So long as Elegant called on its accounts and successfully promoted and sold the coffee and tea products provided to Elegant by its vendors, Elegant continued representing its suppliers." Thus, there was evidence of a

substantial business relationship between the businesses and third-party customers based on the prior dealings between the parties. Accordingly, plaintiff satisfied its burden of showing a genuine issue of fact as to this first element since "the legal effect of an implied in fact contract is the same as that of an express contract in that it too is considered a 'real' contract or genuine agreement between the parties[,]" *Miles*, 167 N.C. App. at 36, 604 S.E.2d at 333.

With regard to the second element, it is undisputed defendants knew about those contracts since plaintiff acquired those customers when it purchased Elegant and Imperial. Thus, defendants would have been aware of those contracts. As to the third element, plaintiff has forecasted evidence that Ludine, on behalf of Associated Beverage, induced or attempted to induce the customers to switch their business to defendants.

Regarding the fourth element, this Court has noted that: "In order to demonstrate the element of acting without justification, the action must indicate no motive for interference other than malice." *Area Landscaping, L.L.C. v. Glaxo-Wellcome*, Inc., 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003) (internal quotation marks omitted). Plaintiff alleged that defendants maliciously interfered with the

contracts in violation of the non-compete.  As discussed above, because there is a genuine issue of fact as to whether Ludine violated the non-compete once it has been revised on remand, there is also a genuine issue of fact as to whether he acted without justification.

Finally, with regard to the last element, plaintiff forecasted evidence that it suffered damages in the form of lost business and lost profits.  Specifically, plaintiff claimed that although it used to generate $70,000 in business, it now only generates $20,000 based on defendants' alleged interference with third-party customers.  Thus, in sum, plaintiff has forecasted evidence for each element of tortious interference with a contract, and the trial court erred in granting defendants' motion for summary judgment as to this claim.

**III.  Tortious Interference with a Prospective Economic Advantage**

Next, plaintiff argues that the trial court erred in granting defendants' summary judgment motion on its claim for tortious interference with a prospective economic advantage.

"In order to maintain an action for tortious interference with prospective advantage, a [p]laintiff must show that [the] [d]efendants induced a third party to refrain from entering into a contract with [the] [p]laintiff without justification.

Additionally, [the] [p]laintiff must show that the contract would have ensued but for [the] [d]efendants' interference." *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 585, 561 S.E.2d 276, 286 (2002).

Here, as discussed, plaintiff alleged that third-party customers switched their business to defendants instead of continuing their business relationships with plaintiff. Furthermore, as noted above, defendants were not justified in their conduct because, according to plaintiff's contentions, they did so in violation of the non-compete signed by Ludine. Accordingly, there is a genuine issue of fact whether customers refrained from entering into contracts or continuing previous implied contracts with plaintiff but for defendants' unjustified interference. Therefore, the trial court erred in granting summary judgment on this claim.

**IV.  Unfair and Deceptive Practices or Acts**

Next, plaintiff argues that the trial court erred in granting summary judgment as to his claim for unfair and deceptive practices or acts. Specifically, plaintiff contends that since there is a material issue of fact whether defendants solicited business away from plaintiff and whether Ludine's breach of the non-compete was accompanied by aggravating

factors, the unfair and deceptive practice claim survives as well.

"Although [N.C. Gen. Stat. § 75-1.1] was intended to benefit consumers, its protections do extend to businesses in appropriate situations." *DaimlerChrysler Corp.*, 148 N.C. App. at 585, 561 S.E.2d at 286.  To prevail on a claim of unfair and deceptive practices, a plaintiff must show: "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998).

Here, plaintiff's unfair and deceptive practices claim rests on its claims for Ludine's breach of the non-compete, tortious interference with contract, and tortious interference with an economic advantage.  Initially, we note that plaintiff's claims for tortious interference with contract and tortious interference with an economic advantage allege that defendants engaged in an unfair method of competing with plaintiff.  As discussed above, since there is a material issue of fact whether defendants solicited business away from plaintiff in violation of the non-compete, plaintiff's allegations may also maintain an unfair and deceptive practice claim.

With regard to plaintiff's contention that its unfair and deceptive practices claim could be based upon Ludine's breach of the non-compete, "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1. The plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act." *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000) (internal quotation marks and citations omitted). Here, plaintiff has pled sufficient facts showing aggravating circumstances accompanying Ludine's alleged breach of the non-compete to support its unfair and deceptive practices claim. This Court has noted that "[a]ggravating circumstances include conduct of the breaching party that is deceptive[,]" and, when determining whether conduct is deceptive, "its effect on the average consumer is considered." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794, 561 S.E.2d 905, 910 (2002). As discussed, Ludine had been involved in the industry for over fifteen years and had built significant goodwill in this particular area. As part of the sale of Elegant and Imperial, Ludine agreed to sign a non-compete agreement, which would presumably have been an important part of plaintiff's

willingness to buy the businesses. Then, according to plaintiff, Ludine purposefully violated it in an effort to solicit customers to his wife's new business. Given that plaintiff has pled facts alleging that Ludine purposefully violated an agreement which served as important consideration for plaintiff's decision to buy Imperial and Elegant, plaintiff has sufficiently pled facts showing the egregious nature of Ludine's breach of the non-compete to survive summary judgment. Accordingly, plaintiff has forecasted evidence that Ludine's breach of the non-compete was deceptive and was sufficient to maintain an unfair and deceptive practice claim.

## V. Injunctive Relief

Finally, plaintiff contends that the trial court erred in granting summary judgment on its claim for injunctive relief. Specifically, plaintiff alleges that it has shown the likelihood of success on the merits of its case; thus, it is entitled to pursue injunctive relief.

"Because a preliminary injunction is an extraordinary measure, it will issue only upon the movant's showing that: (1) there is a likelihood of success on the merits of his case; and (2) the movant will likely suffer irreparable loss unless the injunction is issued." *VisionAIR, Inc. v. James*, 167 N.C. App.

504, 508, 606 S.E.2d 359, 362 (2004) (internal quotation marks omitted). Here, because it held the non-compete unenforceable, the trial court necessarily found that plaintiff failed to show there was a likelihood of success on its breach of contract claim. However, as discussed above, because we are reversing the trial court's order and remanding the non-compete to the trial court to exercise its authority to revise the geographic scope of the non-compete based on paragraph 6 of the non-compete, the trial court must determine whether there is a likelihood of success on the merits of plaintiff's breach of contract claim based on the revised non-compete. Should the trial court conclude there is, it must also determine "whether the issuance of the injunction is necessary for the protection of plaintiff's rights during the course of litigation; that is, whether plaintiff has an adequate remedy at law." *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 406, 302 S.E.2d 754, 762 (1983). Based on these considerations, the trial court should determine whether plaintiff is entitled to injunctive relief.

**Conclusion**

Because the trial court had the express authority to revise the geographic scope of the non-compete based on the terms of the agreement, we remand for the trial court to revise the

territorial area of the non-compete to include those areas where Elegant and Imperial had former customers. Since there is a genuine issue of material fact whether Ludine violated the revised non-compete, we reverse the order granting summary judgment on plaintiff's breach of contract claim. In addition, we conclude that plaintiff has presented evidence showing a genuine issue of material fact on its remaining tort claims and request for injunctive relief. Therefore, we reverse the order granting summary judgment on those claims and remand for trial.

REVERSED AND REMANDED.

Judge McGEE concurs.

Judge ELMORE dissents by separate opinion.

NO. COA14-185

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

Beverage Systems of the
Carolinas, LLC,

    Plaintiff,

    v.                          Iredell County
                                      No. 12 CVS 1519

Associated Beverage Repair,
LLC, Ludine Dotoli and
Cheryl Dotoli,

    Defendants.

    ELMORE, Judge., dissenting.

    Because I believe the "blue pencil" doctrine applies to the parties' provision in the non-compete purportedly enabling the trial court to rewrite or modify the unreasonable territory restrictions, I would affirm the trial court's order granting summary judgment for defendants on plaintiff's claim of breach of the non-compete.  I would also affirm the trial court's order granting defendants' motion for summary judgment on plaintiff's cause of action for tortious interference with a contract because plaintiff did not forecast enough evidence of conduct to show that it formed an implied contract-in-fact with its customers.  As such, plaintiff's claims for tortious interference with a prospective economic advantage, unfair and

deceptive trade practices, and injunctive relief would necessarily fail, and I would affirm the trial court's order as to those issues.

## I. Analysis

### a.) Breach of the non-compete

Plaintiff argues that the trial court erred in granting defendants' motion for summary judgment on plaintiff's claim for breach of the non-compete. I disagree.

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)). We must consider "the pleadings, affidavits and discovery materials available in the light most favorable to the non-moving party[.]" *Pine Knoll Ass'n, Inc. v. Cardon*, 126 N.C. App. 155, 158, 484 S.E.2d 446, 448 (1997).

While I agree with the majority that the geographic area covered by the non-compete was overbroad and thus unreasonable, the majority further concludes that "the trial court had authority to enforce the non-compete through paragraph six of

the non-compete which specifically and expressly gave the trial court authority to 'revise the restrictions' 'to cover the maximum period, scope and area permitted by law.'" Thus, the majority rules that the "blue pencil" doctrine is inapplicable in the present case due to the parties' aforementioned agreed upon provision.

Parties to a contract "may bind themselves as they see fit . . . unless the contract would violate the law or is contrary to public policy." *Lexington Ins. Co. v. Tires Into Recycled Energy & Supplies, Inc.*, 136 N.C. App. 223, 225, 522 S.E.2d 798, 800 (1999) (citation and quotation marks omitted). The "blue pencil" doctrine, in part, serves to prevent a court from "draft[ing] a new contract for the parties." *Seaboard Indus., Inc. v. Blair*, 10 N.C. App. 323, 337, 178 S.E.2d 781, 790 (1971). The doctrine drastically restricts a court's authority to modify an overly broad territory restriction: "A court at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or rewrite the covenant." *Hartman v. W.H. Odell & Associates, Inc.*, 117 N.C. App. 307, 317, 450 S.E.2d 912, 920 (1994).

Here, the provision that purportedly gives the trial court authority to rewrite the non-compete's unreasonable territory restrictions states, in part:

> If, at the time of enforcement . . . a court holds that the restrictions stated herein are unreasonable under the circumstances then existing, the parties hereto agree that . . . the court shall be allowed to revise the restrictions contained . . . to cover the maximum period, scope and area **permitted by law.**"

(emphasis added). The language of the provision expressly limits a court's revision to that "permitted by law." Thus, the provision by its very terms makes the "blue pencil" doctrine applicable. Alternatively, the provision is unenforceable as it violates the "blue pencil" doctrine on its face. Under either scenario, the "blue-pencil" doctrine applies.

The trial court was correct by not *rewriting* the non-compete to make it reasonable because the law makes clear that a court cannot engage in such action. However, the trial court has the authority to *enforce* portions of a non-compete that are reasonable and disregard the remaining portions if the non-compete divides the restricted area into distinct units. *See Welcome Wagon Int'l, Inc. v. Pender*, 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961). While the non-compete in the case at

bar divides the restricted territory into North Carolina and South Carolina, the trial court did not enforce any portion of the non-compete because neither of those restrictions taken separately are reasonable, even in light of the deference given towards non-compete covenants resulting from business sales. In sum, the non-compete's territory restrictions were unreasonable, and the trial court was without legal authority to rewrite or modify the territory restrictions irrespective of the parties' contractual provision providing otherwise.

While the majority relies on *Outdoor Lighting Perspectives Franchising, Inc. v. Harders*, ___ N.C. ___ App. ___, 747 S.E.2d 256 (2013) in support of its holding, that case addressed a franchisor's (a party to the non-compete), as opposed to a trial court's, right to modify a non-compete outside the context of a business sales contract. *Id*. at ___, 747 S.E.2d at 265, n.3. The majority asserts that *Outdoor Lighting* "indicates a willingness of our courts to recognize and enforce revised non-compete agreements[.]" However, the majority's ruling in this case takes a far more drastic approach, ordering the trial court to undertake the revising and rewriting of the non-compete rather than the contracting party.

In light of these reasons, I would affirm the trial court's order granting summary judgment for defendants on plaintiff's claim of breach of the non-compete because the covenant is unenforceable and invalid.

**b.) <u>Tortious Interference With a Contract</u>**

Next, the majority agrees with plaintiff's argument that the trial court erred in granting defendants' motion for summary judgment on plaintiff's cause of action for tortious interference with a contract. Plaintiff avers that a contract implied-in-fact existed between itself and its customers acquired from the agreement. I disagree.

The first element of tortious interference with contractual rights is "(1) the existence of a valid contract between plaintiff and a third party[.]" *Barker v. Kimberly-Clark Corp.*, 136 N.C. App. 455, 462, 524 S.E.2d 821, 826 (2000) (citation omitted). Mutual assent of both parties to the terms of a contract "is essential to the formation of any contract . . . so as to establish a meeting of the minds." *Connor v. Harless*, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006) (citation and quotation omitted). Mutual assent is typically formed "by an offer by one party and an acceptance by the other, which offer and acceptance are *essential* elements of a contract." *Id.*

(citation and quotation omitted) (emphasis in original). An implied contract-in-fact is "as valid and enforceable as an express contract." *Creech v. Melnik*, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998) (citation omitted). The formation of an implied contract "arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts." *Id.* (citation omitted). The conduct of the parties shall imply an offer and acceptance. *Revels v. Miss Am. Org.*, 182 N.C. App. 334, 337, 641 S.E.2d 721, 724 (2007).

Here, plaintiff concedes that "there are no written [customer] contracts. The [defendants] didn't have any when they sold the business nor did [plaintiff]." However, plaintiff alleges that defendants "w[ere] aware of the contracts and customers transferred to [plaintiff] at the time of purchase of the Business."

In support of its contention that a contract implied-in-fact existed with customers, plaintiff referenced 1.) Gandino's affidavit stating that plaintiff conducted business with customers who "had engaged in a regular course of conduct and business relationships with Imperial and/or Elegant since at least 2007"; and 2.) Ludine Dotoli's affidavit that "the

arrangement was that so long as Imperial provided competent services at reasonable rates, its customers kept calling back for additional services. So long as Elegant called on its account and successfully promoted and sold the coffee and tea products provided to it by its vendors, Elegant continued representing its suppliers." Contrary to the majority's holding, the forecast of evidence put forth by plaintiff suggesting a general business relationship with its customers was insufficient evidence to constitute an offer, acceptance, mutual assent, or obligation to fulfill specific terms of an agreement. Thus, I would affirm the trial court's order granting defendants' motion for summary judgment on this issue because plaintiff did not forecast enough evidence of conduct to show that it formed an implied contract-in-fact with its customers.

## c.) Tortious Interference With a Prospective Economic Advantage

Plaintiff also argues that the trial court erred in granting defendants' motion for summary judgment on plaintiff's cause of action for tortious interference with a prospective economic advantage. I disagree.

A plaintiff bringing a cause of action for tortious interference with a prospective economic advantage must

establish that "the defendant, without justification, induced a third party to refrain from entering into a contract with the plaintiff, which would have been made absent the defendant's interference." *MLC Auto., LLC v. Town of S. Pines*, 207 N.C. App. 555, 571, 702 S.E.2d 68, 79 (2010) (citation omitted).

As previously discussed, plaintiff did not establish the existence of any contracts with its customers. Thus, plaintiff's forecast of evidence necessarily does not and cannot identify any actual contract that defendants induced customers to refrain from entering. Moreover, plaintiff never specifically alleges defendants' inducement to refrain from entering a contract, but merely states, "[a]bsent the Defendants' interference, [plaintiff] would have maintained its customer base[,]" "Defendants have purposely and intentionally interfered with the contracts . . . of [plaintiff] with the intent to steal the customers[,]" "Defendants have directly contacted and solicited the customers of [plaintiff][,]" and "Defendants have interfered with [plaintiff's] business relationships[.]"

While plaintiff had an expectation of a business relationship with its customers, it forecasts no evidence in the record to show that but for defendants' actions, contracts with

its customers would have been formed. Plaintiff merely makes general and speculative allegations regarding potential future contracts: "As a result of Defendants' interference with [plaintiff's] business relationships and business expectancy, [plaintiff] has suffered damages . . . in excess of $10,000.00." Plaintiff's expectation of a business relationship with current customers is insufficient by itself to establish a tortious interference with a prospective economic advantage claim. *See Dalton v. Camp*, 353 N.C. 647, 655, 548 S.E.2d 704, 710 (2001) (rejecting a claim for tortious interference with a prospective economic advantage claim because "while [plaintiff] may have had an expectation of a continuing business relationship with [customer], at least in the short term, he offers no evidence showing that but for [defendant's] alleged interference a contract would have ensued"). Thus, I would affirm the trial court's order granting summary judgment in favor of defendants on this issue.

## d.) Unfair and/or Deceptive Trade Practices

Next, plaintiff argues that the trial court erred in granting summary judgment for defendants on plaintiff's claim for unfair and deceptive trade practices. I disagree.

Plaintiff contends that claims involving breach of a covenant not to compete, tortious interference with contracts, and tortious interference with a prospective economic advantage form the basis for claims of unfair and deceptive trade practices. Even if we assume *arguendo* that this is true under North Carolina law, plaintiff argues that the trial court erred in granting summary judgment on the issue of unfair and deceptive trade practices because "[plaintiff] has set forth sufficient evidence to establish material questions of fact as to each element of its claims" for tortious interference with a contract, tortious interference with a prospective economic advantage, and breach of the non-compete. Since I would rule that plaintiff failed to establish genuine issues of material facts on those claims, plaintiff's claim for unfair and deceptive trade practices would necessarily also fail.

### e.) Injunctive Relief

Finally, plaintiff argues that it is entitled to injunctive relief because it has established that the trial court erred in granting summary judgment for defendants. However, since I would hold that the trial court did not err in granting summary judgment, plaintiff's argument for injunctive relief would be meritless.

## II. Conclusion

In sum, I would affirm the trial court's order granting defendants' motion for summary judgment because no genuine issue of material fact exists as to plaintiff's claims for breach of the non-compete, tortious interference with a contract, tortious interference with a prospective economic advantage, unfair and deceptive trade practices, and injunctive relief.