IN THE SUPREME COURT OF NORTH CAROLINA

No. 316A14

Filed 18 March 2016

BEVERAGE SYSTEMS OF THE CAROLINAS, LLC

v.

ASSOCIATED BEVERAGE REPAIR, LLC, LUDINE DOTOLI, and CHERYL DOTOLI

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 762 S.E.2d 316 (2014), reversing an order granting summary judgment for defendants entered on 3 October 2013 by Judge A. Robinson Hassell in Superior Court, Iredell County, and remanding for additional proceedings and for trial. Heard in the Supreme Court on 31 August 2015.

> *Jones, Childers, McLurkin & Donaldson, PLLC, by Kevin C. Donaldson and Dennis W. Dorsey, for plaintiff-appellee.*
>
> *Eisele Ashburn Greene & Chapman, PA, by Douglas G. Eisele, for defendant-appellants.*
>
> *Higgins Benjamin PLLC, by Jonathan Wall; and Winslow Wetsch, PLLC, by Laura J. Wetsch, for North Carolina Advocates for Justice, amicus curiae.*

EDMUNDS, Justice.

The trial court in this case declined to enforce a covenant not to compete, even though the parties expressly agreed in their contract that a court could rewrite overbroad temporal and territorial limitations that would otherwise render the covenant unenforceable. We agree that the trial court correctly refused to amend the

covenant. In addition, we conclude that the trial court properly entered summary judgment in defendants' favor on plaintiff's claims for tortious interference with contract, tortious interference with prospective economic advantage, and unfair and deceptive practices. Accordingly, we reverse the decision of the Court of Appeals reversing the trial court.

Elegant Beverage Products, LLC ("Elegant") and Imperial Unlimited Services, Inc. ("Imperial") were two businesses that supplied, installed, and serviced beverage products and beverage dispensing equipment in parts of North Carolina and South Carolina. Elegant sold premium coffee and tea, and Imperial serviced soft drink dispensers. At the time these companies were sold to plaintiff, Thomas Dotoli owned Imperial, while Thomas's wife Kathleen and their son Loudine Dotoli[1] owned Elegant. Both Imperial and Elegant operated out of Statesville, North Carolina.

Mark Gandino entered into negotiations with Thomas and Kathleen Dotoli to purchase the business and the assets of both companies. Gandino organized plaintiff Beverage Systems of the Carolinas, LLC ("Beverage Systems" or "plaintiff") under North Carolina law in May 2009, and on or about 20 July 2009, Gandino purchased Elegant and Imperial to operate as Beverage Systems. Specifically, Beverage Systems entered into an Asset Purchase Agreement with Thomas, Kathleen, and Loudine Dotoli, and with Elegant and Imperial to purchase the assets, customer lists,

---

[1] Throughout their pleadings and briefs, the parties refer to the son as both "Ludine" and "Loudine." We will follow the spelling used by Loudine in his affidavit.

equipment, existing inventory, and associated real property of Elegant and Imperial for $650,000.

The closing, sale, and purchase were completed on 30 September 2009. That same day, the parties executed a "Non-Competition, Non-Solicitation and Confidentiality Agreement" ("the Agreement") in which Loudine and his parents agreed not to compete with plaintiff's business in either North or South Carolina before 1 October 2014. Paragraph six of the Agreement contained a provision permitting the trial court to revise its temporal and geographic limits should a court find them to be unreasonably broad. The Dotoli family members, Elegant, and Imperial received $10,000 of the purchase price as consideration for the Agreement.

Defendant Cheryl Dotoli, Loudine's wife, was not a party to either the purchase contract or the Agreement. In 2011, Cheryl formed defendant Associated Beverage Repair, LLC ("Associated Beverage"). Associated Beverage began to install and service beverage dispensing equipment in parts of North and South Carolina, thus operating in a manner similar to Imperial. Gandino learned of Associated Beverage's existence in March 2011 when Thomas Dotoli communicated to representatives of Bunn-O-Matic, one of Imperial's former customers, that Imperial had been sold to Beverage Systems, which had vacated the building that Imperial previously had occupied. Thereafter, Bunn-O-Matic elected to conduct business with defendant Associated Beverage rather than plaintiff Beverage Systems.

After plaintiff's requests that defendants cease and desist went unanswered, Beverage Systems filed a complaint on 14 June 2012 in Superior Court, Iredell County, against Loudine, Cheryl, and Associated Beverage, seeking injunctive relief and damages. Plaintiff alleged against Loudine breach of the Agreement not to compete. Plaintiff also alleged claims against all defendants for tortious interference with contract, tortious interference with plaintiff's prospective economic advantage, and unfair and deceptive practices. Defendants filed their answer on 4 October 2012. Although defendants asserted multiple defenses, they admitted that Associated Beverage "with the help of L[o]udine Dotoli, intends to compete with Plaintiff," but "denied that such competition violates any Non-Competition Agreement." Defendants contended, *inter alia*, that neither Cheryl Dotoli, the sole member in Associated Beverage, nor Associated Beverage signed the Agreement not to compete, and therefore they were not bound by its terms. Defendants also asserted that the Agreement was unenforceable by virtue of being overly broad in geographic scope. On 11 September 2013, defendants moved for summary judgment on all issues. After conducting a hearing, the trial court entered an order on 3 October 2013 granting defendants' motion for summary judgment in all respects. Plaintiff appealed.

In a divided opinion, the Court of Appeals reversed the trial court's order. *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, ___ N.C. App. ___, ___, 762 S.E.2d 316, 326 (2014). Addressing first the Agreement not to compete, the majority found that the Agreement's five-year temporal restriction was

reasonable, *id.* at ___, 762 S.E.2d at 320-21, but that its geographic scope was unreasonable because it included areas beyond those "necessary to maintain plaintiff's customer relationships," *id.* at ___, 762 S.E.2d at 321. The Court of Appeals then observed that paragraph six of the Agreement expressly authorized the trial court to revise the unreasonable territorial restriction. *Id.* at ___, 762 S.E.2d at 321. Addressing the effect of paragraph six, the Court of Appeals, citing *Welcome Wagon Int'l, Inc. v. Pender*, 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961), acknowledged that North Carolina has adopted the "strict blue pencil doctrine" under which a court cannot rewrite a faulty covenant not to compete but may enforce divisible and reasonable portions of the covenant while striking the unenforceable portions. *Beverage Sys.*, ___ N.C. App. at ___, 762 S.E.2d at 321. Here, though, the majority found that the limitations of the blue pencil doctrine did not apply because the Agreement gave the trial court carte blanche to rewrite all the geographical terms of the covenant. *Id.* at___, 762, S.E.2d at 321. Nevertheless, relying on paragraph six of the Agreement and reasoning that the parties to the contract and the Agreement had relatively equal bargaining power, the Court of Appeals concluded that the trial court erred by declining to revise the Agreement pursuant to that paragraph "to make it reasonable based on the evidence before it." *Id.* at ___, 762 S.E.2d at 322. The Court of Appeals remanded the case to the trial court to revise the territorial scope of the Agreement. *Id.* at ___, 762 S.E.2d at 326. In addition, the majority also concluded that plaintiff forecast sufficient evidence of all remaining claims to survive

defendants' motion for summary judgment and remanded the case for trial. *Id.* at ___, 762 S.E.2d at 326.

The dissenting judge agreed with the majority that the geographic scope of the Agreement was overbroad. *Id.* at ___, 762 S.E.2d at 326 (Elmore, J., dissenting). However, the dissenter argued that the blue pencil doctrine applied because the language of paragraph six limited the trial court's power to revise the Agreement to those measures "permitted by law." *Id.* at ___, 762 S.E.2d at 327. This limitation meant that the trial court lacked the authority to rewrite the restrictions set out in the Agreement that were not reasonable. *Id.* at ___, 762 S.E.2d at 327. Since the Agreement contained no reasonable territorial restrictions, the dissenter would affirm the order of the trial court granting summary judgment in defendants' favor as to breach of the covenant not to compete, despite the provisions in paragraph six of the Agreement. *Id.* at ___, 762 S.E.2d at 327.

The dissenting judge also argued that plaintiff presented insufficient evidence of implied contracts with third-party customers, *id.* at ___, 762 S.E.2d at 328, or that, but for defendants' actions, contracts with third-party customers would have been formed, *id.* at ___, 762 S.E.2d at 328-29. Concluding that there were no genuine issues of material fact as to plaintiff's remaining claims for relief, the dissenter would have affirmed the trial court's order granting summary judgment in favor of defendants on all of plaintiff's remaining claims. *Id.* at ___, 762 S.E.2d at 329. Defendants appeal as a matter of right.

We review an opinion of the Court of Appeals for errors of law. N.C. R. App. P. 16(a); *State v. Brooks*, 337 N.C. 132, 149, 446 S.E.2d 579, 590 (1994). When an appeal is based on a dissent, our review is limited to "consideration of those issues that are . . . specifically set out in the dissenting opinion." N.C. R. App. P. 16(b). Here, we review the trial court's grant of defendants' motion for summary judgment. To prevail on a motion for summary judgment, the moving party must show that, viewed in the light most favorable to the nonmovant, *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted), no genuine issue exists "as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c).

Contending that the Court of Appeals erred when it remanded this matter to the trial court to revise the geographical terms of the Agreement, defendants first argue that the Agreement is too broad in territorial scope to be enforceable and that neither paragraph six of the Agreement nor the blue pencil doctrine empowers the trial court to amend that aspect of the Agreement. We begin by considering the territorial limits set out in the Agreement.

This Court will enforce a covenant not to compete made in connection with the sale of a business "(1) if it is reasonably necessary to protect the legitimate interest of the purchaser; (2) if it is reasonable with respect to both time and territory; and (3) if it does not interfere with the interest of the public." *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 662-63, 158 S.E.2d 840, 843 (1968) (citations omitted).

Ordinarily, a covenant's geographic scope will be found reasonable if it encompasses the area served by the business that the covenant protects, *Thompson v. Turner*, 245 N.C. 478, 481-82, 96 S.E.2d 263, 266 (1957), or, more specifically, if the protected business had clientele in the area covered by the covenant, *Noe v. McDevitt*, 228 N.C. 242, 245, 45 S.E.2d 121, 123 (1947) (citations omitted) (finding the territorial limitation of North and South Carolina unreasonable when the business's services were confined to eastern North Carolina); *Manpower of Guilford Cty., Inc. v. Hedgecock*, 42 N.C. App. 515, 523, 257 S.E.2d 109, 115 (1979) ("A restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in maintaining his customers.").

Here, the Agreement prohibits defendants from engaging in a competing business venture "in the states of North Carolina or South Carolina." The record indicates that, at the time the Agreement was executed, Imperial's North Carolina market did not extend east of Stanly County, while Elegant's North Carolina market did not extend east of Wake County. Neither company had a market west of Morganton, North Carolina, or in the Sandhills. In South Carolina at that time, neither Imperial nor Elegant operated east of the City of Rock Hill or south of the City of Spartanburg. A glance at a map reveals that neither Imperial nor Elegant had a presence in sizeable portions of either state. A primary purpose of the type of covenant not to compete found in the Agreement is to provide some protection to the seller for a defined time or space, or both, *see, e.g.*, *A.E.P. Indus., Inc. v. McClure*, 308

N.C. 393, 408, 302 S.E.2d 754, 763 (1983) (addressing covenants not to compete in employment contexts), but when the Agreement was executed, Imperial and Elegant had no customers to protect in large swaths of the area covered by the Agreement. As a result, we agree with the Court of Appeals that this geographical restriction is unreasonably broad.

We next consider whether the Agreement may be rewritten, blue-penciled, or revised. As to the first alternative, when an agreement not to compete is found to be unreasonable, we have held that the court is powerless unilaterally to amend the terms of the contract. *Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989) ("The courts will not rewrite a contract if it is too broad but will simply not enforce it."). If the parties have agreed upon territorial limits of competition, these limits will be enforced "as written or not at all," for courts will not carve out reasonable subdivisions of an otherwise overbroad territory. *Welcome Wagon*, 255 N.C at 251, 120 S.E.2d at 744 (Bobbitt, J., dissenting) (citing *Noe*, 228 N.C. at 245, 45 S.E.2d at 123).

Plaintiff argues that the blue pencil doctrine should save the Agreement. As discussed above, blue-penciling is the process by which "a court of equity will take notice of the divisions the parties themselves have made [in a covenant not to compete], and enforce the restrictions in the territorial divisions deemed reasonable and refuse to enforce them in the divisions deemed unreasonable." *Welcome Wagon*, 255 N.C. at 248, 120 S.E.2d at 742 (majority opinion). That doctrine is unavailable

here. The Agreement's territorial limits cannot be blue-penciled unless the Agreement can be interpreted so that it sets out both reasonable and unreasonable restricted territories. *Id*. at 248, 120 S.E.2d at 742. We found above that the restrictions to all of North Carolina and South Carolina, the only territorial restrictions in the Agreement, are unreasonable. Striking the unreasonable portions leaves no territory left within which to enforce the covenant not to compete. As a result, blue-penciling cannot save the Agreement.

Finally, plaintiff argues that the parties gave the trial court the power under paragraph six of the Agreement to revise its territorial limits to make them reasonable. However, parties cannot contract to give a court power that it does not have. *Id*. at 248, 120 S.E.2d at 742 ("The court is without power to vary or reform the contract by reducing either the territory or the time covered by the restrictions."); *see also Penn v. Standard Life Ins. Co.*, 160 N.C. 399, 402, 76 S.E. 262, 263 (1912) ("Courts are not at liberty to rewrite contracts for the parties. We are not their guardians, but the interpreters of their words. We must, therefore, determine what they meant by what they have said—what their contract is, and not what it should have been."). Allowing litigants to assign to the court their drafting duties as parties to a contract would put the court in the role of scrivener, making judges postulate new terms that the court hopes the parties would have agreed to be reasonable at the time the covenant was executed or would find reasonable after the court rewrote the limitation. We see nothing but mischief in allowing such a procedure. Accordingly,

the parties' Agreement is unenforceable at law and cannot be saved.

We now consider plaintiff's remaining claims. Plaintiff contends that the trial court erred in granting defendants' motion for summary judgment on its claims of tortious interference with contract and tortious interference with prospective economic advantage. The elements of a claim for tortious interference with contract are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citing *Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954)). Interference with a contract is "justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors." *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (citing *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221-22, 367 S.E.2d 647, 650 (1988)).

Thus, plaintiff must first establish the existence of a valid contract between plaintiff and its customers. Evidence in the record indicates that the industry custom is for owners of beverage-dispensing equipment to engage companies providing repairs to the equipment on an as-needed basis only, not via contract, and plaintiff concedes that the Court of Appeals correctly found that no express contracts existed.

Nevertheless, plaintiff argues that defendants interfered with implied-in-fact contracts. To establish the existence of these implied contracts, plaintiff alleged in its complaint that when it purchased Elegant and Imperial, the "contracts and customers" of those companies "transferred to" plaintiff. In addition, plaintiff points out that Gandino stated in an affidavit that plaintiff purchased "the business, goodwill and equipment of Imperial and Elegant, specifically including, any and all customers and customer lists," giving plaintiff "the exclusive right to continue the on-going business relationships that Imperial and Elegant had fostered with their customers." However, even considered in the light most favorable to plaintiff, this evidence fails sufficiently to establish the evidence of implied-in-fact contracts. In fact, the evidence does not establish any legal obligation of a third-party customer to Elegant or Imperial that would have been transferred to Beverage Systems through the Agreement. At most, this evidence indicates only a general business relationship. Moreover, because defendants were not restrained by the covenant not to compete, they were free to engage in routine business competition with Beverage Systems. Accordingly, we conclude that the trial court properly allowed summary judgment as to this issue.

Plaintiff argues that the trial court also erred when it allowed defendants' motion for summary judgment on its claim for tortious interference with prospective economic advantage. This tort arises when a party interferes with a business relationship "by maliciously inducing a person not to enter into a contract with a third

person, which he would have entered into but for the interference, . . . if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights." *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965) (citations omitted). However, a plaintiff's mere expectation of a continuing business relationship is insufficient to establish such a claim. *Dalton*, 353 N.C. at 655, 548 S.E.2d at 710. Instead, a plaintiff must produce evidence that a contract would have resulted but for a defendant's malicious intervention. *Id.* at 655, 548 S.E.2d at 710.

Plaintiff alleged that defendants "sought after the customers of Beverage System[s] which were previously transferred to Beverage Systems" and "purposely and intentionally interfered with the contracts and agreements of Beverage Systems with the intent to steal the customers away from Beverage Systems." Plaintiff contends that it "had an expectation to receive an economic advantage as a result of its business relationship with the Customers." However, plaintiff has not demonstrated that any contract would have ensued but for defendants' conduct, nor has plaintiff identified a particular business with which it lost an economic advantage. Instead, plaintiff appears to rely on the expectation that Elegant's and Imperial's former customers would continue to do business with plaintiff, an expectation insufficient to support a claim for either tortious interference with contract or tortious interference with prospective economic advantage. *Id.* at 655, 548 S.E.2d at 710. Moreover, because the geographical limitations set out in the

Agreement were unenforceable, its temporal limitations were applicable either everywhere, plainly an absurd result here, or nowhere. As a result, defendants were free to compete for customers with plaintiff. In the absence of evidence that defendants' conduct was maliciously motivated, any interference by defendants was a legitimate exercise of their right to compete. Therefore, summary judgment was also appropriate as to this claim.

Finally, plaintiff argues that defendants' actions rise to the level of unfair and deceptive practices under N.C.G.S. § 75-1.1, and that their conduct should be enjoined based upon breach of the Agreement. Plaintiff's section 75-1.1 claim presupposes success of at least one of plaintiff's contract claims. Because we hold that each of those claims fails, plaintiff's unfair and deceptive practices claim also fails. Similarly, plaintiff's request for injunctive relief hinges on the validity of the Agreement. Because we have established that the Agreement is unenforceable, there is no basis on which to enjoin defendant Loudine's conduct.

The trial court correctly allowed defendants' motion for summary judgment as to all claims. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.